UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
HORTI AMERICAS, LLC,

                Plaintiff,

  - against -

STEVEN PRODUCE KING, INC. et al.,

                Defendants.
------------------------------------------------------x

MEMORANDUM AND ORDER

16 Civ. 889 (ILG) (RER)

GLASSER, Senior United States District Judge:

Plaintiff Horti Americas, LLC ("Horti" or "Plaintiff") alleges violations of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a et seq., breach of contract and breach of fiduciary duty against defendants Steven Produce King, Inc. ("SPK") and Shy Yosofov ("Yosofov," together the "Defendants"). On November 21, 2016 and January 30, 2017, this Court granted, respectively, Plaintiff's motion to dismiss Defendants' second counterclaim, alleging fraud and material misrepresentation, and Plaintiff's motion for discovery sanctions. Horti Americas, LLC v. Steven Produce King, Inc., No. 16-CV-889, 2016 WL 6872624 (E.D.N.Y. Nov. 21, 2016) (ECF 21); Horti Americas, LLC v. Steven Produce King, Inc., No. 16-CV-889, 2017 WL 398374 (E.D.N.Y. Jan. 30, 2017) (ECF 31). Familiarity with both orders is assumed. SPK's counterclaim for breach of contract survives. Before the Court is Plaintiff's motion for summary judgment and for attorney's fees, which is GRANTED for the reasons stated herein.

1

## BACKGROUND

The following material facts are drawn from the parties' Local Civil Rule 56.1 Statements and evidentiary submissions, and are undisputed unless otherwise noted.[1]

Plaintiff Horti is an Arizona LLC that sells wholesale quantities of produce. ECF 32-9, Pl. Rule 56.1 St., at ¶¶ 1, 2. SPK is a New York corporation engaged in buying perishable agricultural commodities in wholesale or jobbing quantities, with its principal place of business in Brooklyn, NY. Id. at ¶¶ 4, 5. At all times relevant to this action, both Horti and SPK were PACA licensed. Id. at ¶¶ 3, 5. Yosofov is the controlling shareholder of SPK. ECF 36-4, Def. Rule 56.1 St., at ¶ 2.

Horti and SPK entered into a written contract on August 24, 2015 for the sale of fresh cucumbers, also known as Persian pickles. Pl. 56.1 St. at ¶ 8; ECF 32-2 (the "Contract"). Pursuant to the Contract, Horti was to sell 3,200 cartons of pickles to SPK, at a set price of $13.00 per carton, on 21 day payment terms every week from October 15, 2015 through January 15, 2016. Id. The Contract sets forth quality specifications for the pickles, including that the "[q]uality must be #1," and the "product must be crunchy and dark green." Id.

Between November 9, 2015 and December 11, 2015, Horti completed ten shipments of pickles to SPK, and invoiced SPK for each shipment (the "Invoices"). Pl. 56.1 St. at ¶ 9. Each

---

[1] Plaintiff correctly notes that Defendant's Rule 56.1 Statement is wholly inadequate. A party opposing a motion for summary judgment must "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party . . ." Local Rule 56.1(b). Defendants' Rule 56.1 statement simply sets forth its own version of the facts, and does not respond in any way to Plaintiff's Rule 56.1 Statement. Compare ECF 36-4 to ECF 32-9. Any statement not "specifically controverted by a correspondingly number paragraph" is deemed admitted. Local Rule 56.1(c). Whether the Court rigidly adheres to that rule is inconsequential, as Plaintiff is entitled to summary judgment regardless.

invoice specifies that payment is due "21 days from date you receive and accept merchandise," and includes the following, statutorily required, language:

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

ECF 32-3, Invoices. Each invoice also states that interest will accrue at 10% per annum on unpaid balances and that the prevailing party in any related legal action "shall be entitled to reimbursement of all costs and fees including reasonable attorney's fees incurred." Id.

SPK accepted each shipment at its place of business in Brooklyn, New York. Pl. 56.1 St. at ¶ 16. Defendants allege that each of the shipments was non-conforming to the Contract specifications. Def. 56.1 St., at ¶¶ 5-6. Defendants claim they attempted to sell the non-conforming pickles in good faith, but did so at a loss. Id. at ¶ 20. Following the December 11, 2015 shipment, SPK terminated the Contract, citing Horti's failure to provide conforming goods. Id. at ¶ 8. It is undisputed that SPK never paid the Invoices, which total $143,455.00. Pl. 56.1 St. at ¶ 19. As a result of SPK's early termination of the Contract, Horti sold the balance of the pickles that SPK had committed to purchasing for a loss of $7,570.50. Pl. 56.1 St. at ¶¶ 21-22.

Horti initiated this action on February 22, 2016, asserting claims for (1) recovery of PACA trust benefits, (2) recovery of damages for SPK's unlawful conduct under PACA, (3) breach of contract against SPK, and (4) breach of fiduciary duty against Yosofov. See generally Complt. Defendants asserted two counterclaims, the second of which this Court dismissed, for (1) breach of the contract by SPK only, and (2) fraud and material misrepresentation. See generally Ans. at pp. 11-18; ECF 21. This Court also sanctioned Defendants for discovery violations in the form of an order that the following facts are conclusively established:

1. Horti's Admission requests are admitted.

2. SPK failed to maintain records required by PACA regulations to determine profits or losses on re-sale of Persian pickles supplied by Horti, which are the subject of this case.

3. SPK sustained no provable damages as a result of the quality or condition of the subject Persian pickles supplied by Horti to SPK relating to this case.

4. SPK sustained no economic losses as a result of its transactions with Horti with respect to the Persian pickle shipments at issue.

5. Defendants failed at all relevant times to maintain sufficient freely available inventories and proceeds of produce sales to pay Horti in full.

6. Yosofov transferred to himself SPK's proceeds of produce sales in an amount greater than $143,455.00 plus interest and any attorney's fees due to Horti during the period when Horti was unpaid for the Persian pickles at issue.

ECF 31 (the "Sanctions").

Plaintiff now seeks damages totaling $224,050.85, representing: (a) the principal balance on the unpaid invoices ($143,455.00), (b) its loss for re-selling the pickles that SPK refused to purchase pursuant to the Contract ($7,570.50), (c) 10% interest accrued at $39.30 per day ($18,244.49 as of March 28, 2017), and (d) attorney's fees ($51,736.02) and expenses ($3,044.84). Pl. 56.1 St. at ¶ 35.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. § 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) (citations omitted). "A fact is material if it might affect the outcome of the suit under the governing law." Id. In deciding a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party" and "resolve all

ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (citations omitted).

## DISCUSSION

### A. PACA Liability

PACA was enacted by Congress to regulate the interstate sale and marketing of perishable agricultural commodities by providing "growers and sellers of agricultural produce with a self-help tool enabling them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-pay practices by buyers or receivers of fruits and vegetables." Coosemans Specialities, Inc. v. Gargiulo, 485 F.3d 701, 705 (2d Cir. 2007) citing D.M. Rothman & Co. v. Korea Commercial Bank of N.Y., 411 F.3d 90, 93 (2d Cir. 2005). PACA requires produce buyers to "hold all perishable commodities purchased on short-term credit, as well as sales proceeds, in trust for the benefit of unpaid sellers." Am. Banana Co. v. Republic Nat. Bank of N.Y., N.A., 362 F.3d 33, 37 (2d Cir. 2004) citing 7 U.S.C. § 499e(c). In this way, PACA sellers are "afforded a highly unusual trust beneficiary status that permit[s] them, in the case of defaults, to trump the buyers' other creditors." Am. Banana Co., 362 F.3d at 38. The produce buyer must "maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities," 7 C.F.R. § 46.46(d)(1), and has a duty to "insure that it has sufficient assets to assure prompt payment for produce and that any beneficiary under the trust will receive full payment." D.M. Rothman, 411 F.3d at 94 (citations omitted).

Horti properly preserved its rights as a PACA trust beneficiary by including statutorily mandated language in each of the ten Invoices. 7 U.S.C. § 499e(c)(4); ECF 32-3, Invoices; see also Ne. Trading, Inc. v. Ven-Co Produce, Inc., No. 09-CV-7767, 2011 WL 4444511, at *2

5

(S.D.N.Y. Sept. 26, 2011) ("One way for a merchant to perfect its claims is to include language relating to the preservation of the trust in its ordinary and usual billing or invoice statements."). There is no dispute that SPK never paid the Invoices despite having received and accepted the pickles.

In its defense, SPK argues that none of the ten shipments were conforming to the contract specifications, which resulted in losses that mitigate Horti's damages. ECF 36-5, Opposition, at pp. 4-5. This argument is foreclosed by the Sanctions, which conclusively established that SPK sustained no economic loss or provable damage related to the shipments from Horti at issue in this case. ECF 31. Moreover, PACA requires the produce buyer to maintain records that "contain specific information regarding goods returned or rejected by a buyer, goods dumped as commercially worthless, and regarding other allowable expenses." Henry Klein Produce Corp. v. U.S. Dept. of Agriculture, 831 F.2d 403, 405 (2d Cir. 1987) citing 7 C.F.R. §§ 46.21, 22, 29. The Sanctions also conclusively establish that SPK failed to maintain those records, and SPK has never suggested otherwise. ECF 31. SPK cannot recover losses related to non-conforming goods when it unlawfully failed to maintain records to prove those losses. There are no disputed material facts to contravene Horti's status as a trust beneficiary for all ten shipments, and Horti is entitled to $143,455 on the ten unpaid invoices.

As SPK's controlling shareholder, Yosofov is also personally liable to Horti for that amount. "[I]ndividuals who are principals in corporations which bought produce, but failed to pay, are individually liable for breach of their fiduciary duties." Horizon Mktg. v. Kingdom Int'l Ltd., 244 F.Supp.2d 131, 145 (E.D.N.Y. 2003) (citing cases). To hold Yosofov personally liable, Horti "need only show that [SPK's] assets . . . are insufficient to satisfy the PACA liability." Coosemans, 785 F.3d at 707 (citations omitted). Additionally, PACA imposes liability on a

6

trustee who "uses the trust assets for any purpose other than repayment of the supplier," including the use of trust assets for "legitimate business expenditures, such as the payment of rent, payroll, or utilities." Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F.Supp. 346, 348 (S.D.N.Y. 1993) accord Coosemans, 785 F.3d at 707. The Sanctions established that SPK failed to maintain sufficient assets to fulfill its trust obligations to Horti and that Yosofov transferred SPK's proceeds of produce sales to himself in an amount greater than that owed to Horti. ECF 31. As controlling shareholder of SPK, Yosofov was a PACA trustee who breached his fiduciary duties under that statute and is personally liable for all amounts subject to PACA trust benefits.

    B. **Plaintiff's Claim for Breach of Contract**

Horti argues that it suffered additional damages resulting from SPK's breach of contract. SPK terminated the Contract following the December 11, 2015 shipment, forcing Horti to sell the pickles that SPK had contracted to purchase through January 15, 2016 at a $7,570.50 loss. ECF 32-1, Affidavit of Hector Etzoglou, at ¶¶ 17-18. A seller may resell the undelivered balance of goods and "recover the difference between the resale price and the contract price together with any incidental damages . . ." N.Y. U.C.C. § 2-706(1). SPK breached the Contract by failing to pay for the ten shipments of pickles that it accepted between November 9 and December 11, 2015. Horti was within its rights to re-sell the goods contemplated by the Contract and is entitled to recover the lost balance.

    C. **Defendants' Counterclaim for Breach of Contract**

The sole argument pursued in Defendants' opposition is that Horti breached the Contract by shipping non-conforming pickles which SPK then sold at a loss. ECF 36-5, Opposition, at pp. 4-5. For the reasons indicated in Part A, supra, that claim is foreclosed by the Sanctions which bar SPK's argument that it suffered any loss or damage as a result of a non-conforming product.

7

ECF 31. It is black letter law that a breach of contract claim fails if a party is unable to prove damages resulting from the alleged breach. Because SPK suffered no damages, its breach of contract counterclaim is dismissed.

**D. Attorney's Fees and Interest**

Horti seeks attorney's fees and prejudgment interest, pursuant to the terms set forth in the Invoices. ECF 31-10, Memo. of Law, at pp. 21-23. Although not contemplated by the Contract, "additional terms are to be construed as proposals for addition to the contract" unless the party opposing the terms can establish either "(a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received." N.Y. U.C.C. § 2-207(2); see also Coosemans, 485 F.3d at 708. Once incorporated into the agreement, both attorney's fees and prejudgment interest may be awarded in connection with transactions under PACA, and are subject to the PACA trust. Id. at 707-08 (citing cases); see also Top Banana LLC v. Dom's Wholesale & Retail Ctr., No. 04–CV-2666, 2005 WL 1149774, at *2 (S.D.N.Y. May 16, 2005). As such, an individual PACA trustee is also liable for attorney's fees and prejudgment interest in connection with a PACA transaction. Coosemans, 485 F.3d at 709. Defendants have never opposed the award of attorney's fees and interest. Top Banana, 2005 WL 1149774, at *3 ("[I]nclusion of terms in the seller's invoice, without protest from the buyer on receipt, makes the invoice terms the terms of the contract."). Thus, the undisputed evidence shows that Horti's invoices created an enforceable contract that entitles it to attorney's fees and a 10% per annum interest for which both SPK and Yosofov are liable.

Horti seeks attorney's fees and expenses in the amount of $51,736.02 and $3,044.84, respectively, for which it offers sufficient documentation. ECF 31-10, Memo. of Law, at p. 23;

ECF 32-5, Decl. of Jeffrey Chebot, at ¶¶ 7-24; ECF 32-8, Attorney Invoices and Time Sheets. The bulk of the fees were billed by Plaintiff's lead counsel, Jeffrey Chebot, who has significant experience in the discrete area of PACA law, and billed 134.3 hours at the reasonable rate of $375 per hour. Chebot Decl. at ¶¶ 12, 20; Pl. 56.1 St. at ¶ 39. In prosecuting this case over the past year and one half, Plaintiff's counsel attended numerous hearings before the Magistrate Judge, fully briefed three separate motions, and actively communicated with Defendants and their counsel regarding both a consent judgment and discovery issues. The requested attorney's fees are equivalent to approximately one third of the principal amount awarded to Plaintiff. For those reasons, having considered the relevant factors, the Court finds that the requested attorney's fees and expenses are reasonable and should be awarded. Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000).

## CONCLUSION

Plaintiff's motion for summary judgment is granted, and Defendants' counterclaim for breach of contract is dismissed. Plaintiff is awarded: (1) PACA trust benefits totaling $143,455.00, plus 10% per annum interest, (2) breach of contract damages totaling $7,750.50, and (3) attorney's fees and costs in the amount of $54,780.86, against defendants SPK and Yosofov.

SO ORDERED.

Dated:   Brooklyn, New York
         August 22, 2017

                                    /s/
                              I. Leo Glasser